IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**

**KATHLEEN STEGMAN,**

    **Defendant.**

Case No. 14-CR-20109-01-JAR

## MEMORANDUM AND ORDER

Before the Court are Defendant Kathleen Stegman's Motion for Acquittal (Doc. 191) and Motion for Acquittal or in the Alternative for New Trial (Doc. 205). Defendant Stegman was charged in a Superseding Indictment with three counts of corporate income tax evasion in violation of 26 U.S.C. § 7201, related to her business, Midwest Medical Aesthetics Center ("MMAC").[1] Counts 4 and 5 of the Superseding Indictment charged her with individual tax evasion in violation of 26 U.S.C. § 7201. She and co-Defendant Christopher Smith were charged in Count 6 with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. A jury trial began March 8, 2016. On April 12, 2016, the jury returned guilty verdicts on Counts 1, 2, 4, and 5. The jury acquitted Stegman of Count 3, the corporate tax evasion charge for tax year 2010. Both defendants were acquitted of Count 6, the conspiracy charge.

Early in the six-week jury trial, Defendant indicated to the Court and the Government her intent to file a motion for acquittal based on her belief that the Government would not be able to prove that the corporate income tax in Counts 1, 2, and 3 of the Superseding Indictment was due

---

[1] Doc. 41.

1

and owing "by her."  Defendant filed a Memorandum of Law explaining the argument she intended to make in a possible future motion for acquittal.[2]  The Government responded in opposition to that memorandum.[3]  At the close of the Government's evidence, Defendant orally moved for acquittal pursuant to Fed. Crim. P. 29 and submitted a written Memorandum of Law in support of her oral motion.[4]  The Government filed two responses in opposition.[5]  After the jury returned its verdict, Defendant filed her Motion for Acquittal or in the Alternative, for New Trial.[6]  The Government responded in opposition to that motion.[7]  These motions have been extensively briefed and the Court is now prepared to rule.  For the reasons explained in detail below, the Court grants Defendant Stegman's Motion for Acquittal as to Counts 1 and 2 of the Superseding Indictment.  Defendant's Motion for Acquittal as to Counts 4 and 5 of the Superseding Indictment is denied, as is her motion for new trial.

## I.     Motion for Acquittal

Fed. R. Crim. P. 29 allows a defendant to move for a judgment of acquittal at the close of the Government's evidence.[8]  The Court may reserve decision on the defendant's motion and proceed with trial, submit the case to the jury, and then decide the motion for acquittal before the jury reaches a verdict or after the jury returns a guilty verdict.[9]  Rule 29(c) provides that a

---

[2]Doc. 150.

[3]Doc. 184.

[4]Doc. 190.

[5]Docs. 193 and 197.

[6]Doc. 205.

[7]Doc. 207.

[8]Fed. R. Crim. P. 29(a).

[9]Fed. R. Crim. P. 29(b).

defendant may also move for a judgment of acquittal or renew a previous motion for acquittal within fourteen days after the jury returns a guilty verdict or is discharged.[10]

The Court must consider the sufficiency of the evidence in the light most favorable to the Government and determine "whether any rational trier of fact could have found, from the direct and circumstantial evidence presented to it, together with the reasonable inferences therefrom, the essential elements of the crime beyond a reasonable doubt."[11]  In addition, "[i]t is settled law in this circuit, as elsewhere, that the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself, such that '[i]f an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars.'"[12]

      a. **Corporate Tax Evasion Counts**

Defendant Stegman argues that she should not have been convicted of Counts 1 and 2 of the Superseding Indictment, which charged her with corporate tax evasion pursuant to 26 U.S.C. § 7201.  Those counts of the Superseding Indictment state that for the years 2008 and 2009, Stegman "willfully attempted to evade and defeat substantial corporate income tax due and owing by her to the United States of America . . . ."[13]  Stegman was also charged in Count 3 with corporate tax evasion for the year 2010, but the jury acquitted her on that count.  Stegman argues that by including the phrase "by her" in the Superseding Indictment, the Government was required to prove that she personally owed the corporate income tax.  She contends that the

---

[10] Fed. R. Crim. P. 29(c)(1).

[11] *United States v. McIntosh*, 124 F.3d 1330, 1334 (10th Cir. 1997).

[12] *United States v. Farr*, 536 F.3d 1174, 1181 (10th Cir. 2008) (quoting *United States v. Bishop*, 469 F.3d 896, 902–03 (10th Cir. 2006)).

[13] Doc. 41 at 3–4.

addition of the phrase "by her" constituted the type of particular that the Government must prove to support a conviction. She argues that the Government did not prove that she personally owed the corporate income tax, and in fact Government witnesses testified that an individual, even the sole shareholder and president of a corporation, is not personally liable for the income taxes of a C Corporation.  Defendant further contends that the Government could have proven that the taxes were owed "by her" if the evidence had supported a theory that MMAC is a disregarded entity or if it had supported piercing the corporate veil.  But the Government did not seek to prove that Stegman owed the corporate taxes, only that she was the responsible person tasked with correctly reporting the corporation's income tax.

The Government contends that the phrase "by her" is mere surplusage in the Superseding Indictment, not a particular which needed to be proven at trial.  It argues that the evidence showed that Stegman, as the president and sole shareholder of MMAC, exercised complete control over the finances of MMAC and was the person responsible for reporting income and filing the corporation's tax returns.  The Superseding Indictment should be read with the understanding that although Stegman may not have personally owed the corporation's taxes, she was personally responsible for filing its tax returns.

Defendant cites *United States v. Farr* in support of her argument.  In *Farr*, the Government charged the defendant with failure to pay quarterly employment taxes related to her management of her husband's alternative medicine clinic.[14]  She was charged under § 7201, the same statute under which Defendant Stegman was charged.  The indictment in *Farr* specifically charged that the defendant "did willfully evade and defeat the payment of the *quarterly employment tax for ATHA-Genesis Chapter due and owing by her* to the United States of

---

[14]*Farr*, 536 F.3d at 1176.

4

America . . . ."[15] At trial, the defendant's counsel called attention to the fact that quarterly employment taxes are the responsibility of the employer. Counsel argued for acquittal because "Ms. Farr was not the 'employer' and quarterly employment taxes thus were not and could never have been, as alleged, 'due and owing from her.'"[16] The testimony at trial confirmed that the defendant did not owe quarterly employment taxes, but instead owed a trust fund recovery penalty that had been assessed against her personally for the clinic's failure to pay the employment taxes.[17] The district court ultimately instructed the jury that for their purposes, the trust fund recovery penalty should be treated as the equivalent of the quarterly employment tax. The jury found the defendant guilty.

On appeal, the Tenth Circuit held that the jury instruction amounted to a constructive amendment of the indictment which broadened the potential basis for conviction. The court held that although, as the Government argued, the trust fund recovery penalty and quarterly employment tax are related, liability for each of them "involve[s] different elements and defenses to secure the same pool of money."[18] Because the defendant was not the employer, the Government could not prove that the tax was due and owing by her; it was, rather, due and owing by the clinic, and she was merely a person responsible for paying the clinic's tax.

The Court is persuaded that the *Farr* case is analogous to the situation here. To be sure, the type of tax is not at issue here. But the Superseding Indictment specifies that the corporate taxes were due and owing by Stegman, and the Government did not prove that Stegman herself owed the taxes. It did not offer evidence that would have supported a theory that MMAC was a

---

[15]*Id.* at 1177–78 (emphasis in original).

[16]*Id.* at 1178.

[17]*Id.*

[18]*Id.* at 1182.

sham corporation or a disregarded entity, nor did it attempt to pierce MMAC's corporate veil. The corporate taxes were thus owed by MMAC. Just as the quarterly employment taxes were due and owing by the clinic, not Ms. Farr, the income tax at issue here was due and owing by MMAC, not Ms. Stegman.

Notably, the *Farr* court stated that it had "no occasion to pass on the additional—and purely hypothetical—question whether the government could have proceeded against Ms. Farr under Section 7201 on the theory that, while the clinic, not she, was the employer, she willfully attempted to 'defeat' payment of the *clinic's* Section 3403 quarterly employment taxes."[19]  Here, it seems clear that if the Superseding Indictment stated that Stegman attempted to evade and defeat corporate income tax "due and owing," or "due and owing by MMAC," there would be no issue. Of course, the president of a corporation can be guilty of evading the taxes of the corporation. But by stating that the taxes were due and owing "by her," the Superseding Indictment contained a particular that had to be proven in order to convict Stegman of the charges. Inclusion of the phrase gave the Government the opportunity to prove that Stegman herself owed the tax, which is different than proving that the corporation owed the tax. The phrase is thus not surplusage, because it actually changes the meaning of the charge.[20]  The Court thus finds that the evidence was not sufficient to support Stegman's conviction on Counts 1 and 2 because the Government did not prove, and no reasonable jury could find, that Stegman willfully attempted to evade and defeat corporate income tax due and owing *by her*, as required

---

[19]*Id.* at 1183.

[20]*See id.* at 1181–82 (explaining distinction between constructive amendment and mere variance); *United States v. Hornung*, 949 F.2d 1040, 1046 (10th Cir. 1988) (holding that deletion of the year charged in the indictment did not constitute a constructive amendment because if "clearly did not change the meaning of the charge from that presented to the grand jury").

by the text of the Superseding Indictment. Accordingly, the Court grants Stegman's motion for judgment of acquittal as to Counts 1 and 2.

### b. **Individual Tax Evasion Counts**

Defendant argues that she should also be acquitted of the individual tax evasion counts, Counts 4 and 5 of the Superseding Indictment. The Superseding Indictment specifically charged her with evading her personal income tax by committing acts with regard to the corporation Midwest Medical Aesthetics Center, Inc. However, the corporation became Midwest Medical Aesthetics Center, P.A. in 1998, long before the events charged in the Superseding Indictment. This reflects not only a name change, but also a change in the type of entity that existed because under the laws of Kansas, a general corporation cannot practice medicine, but a professional association can. When this argument was brought to the Court's attention early in the trial, the Court allowed the parties to refer to the entity as MMAC and granted the Government's motion for a variance in the Superseding Indictment, removing the "Inc." from the corporation's name. Defendant argues that this was an unconstitutional constructive amendment and warrants an acquittal on the individual tax evasion counts. The Court disagrees.

The Court invited briefing on this issue during trial, and after considering the submissions by the Government and the defendants, the Court ruled that changing "Midwest Medical Aesthetics Center, Inc." and "MMACI" to "Midwest Medical Aesthetics Center" and "MMAC" was a mere variance, not a constructive amendment, to the Superseding Indictment. The Court based its ruling on the fact that most of the documents in evidence, including all of the tax returns filed by the entity, referred to it as Midwest Medical Aesthetics Center. Even though the entity became a professional association and changed its name, it represented itself as Midwest Medical Aesthetics Center to the IRS. Furthermore, there was no company called Midwest

Medical Aesthetics Center, Inc. after 1998, so there could be no confusion about which entity was referenced in the Superseding Indictment. All parties were on notice that this corporation was the subject of the Superseding Indictment.

For the same reasons that the Court allowed the variance during trial, the Court finds that this did not amount to a constructive amendment of the Superseding Indictment and does not warrant acquittal on the individual tax evasion counts. "A constructive amendment, which is reversible per se, occurs when the district court's instructions and the proof offered at trial broaden the indictment."[21] On the other hand, "[a] simple variance arises when the evidence adduced at trial establishes facts different from those alleged in the indictment . . . ."[22] "[A] simple variance does not warrant the reversal of a conviction so long as the variance did not affect the defendant's substantial rights."[23] The substantial rights courts generally are concerned about in this context are the defendant's Sixth Amendment right to notice of the charges against her, the defendant's Fifth Amendment right against double jeopardy, and the right to be convicted on legally permissible grounds.[24]

It is clear that none of these rights are affected by allowing this variance of the Superseding Indictment. Defendant Stegman had notice of the charges against her and there was no ambiguity as to what corporation's taxes and financial practices were at issue in the Superseding Indictment. No Midwest Medical Aesthetics Center, Inc. existed in Kansas after Defendant changed the corporation's name to Midwest Medical Aesthetics Center, P.A. And as

---

[21] *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) (citing *United States v. Wright*, 932 F.2d 868, 874 (10th Cir. 1991) (overruled on other grounds)).

[22] *Id.* (citing *Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990)).

[23] *United States v. Stoner*, 98 F.3d 527, 532 (10th Cir. 1996) (internal quotation marks and brackets omitted).

[24] *Id.* at 536–37.

the Court previously noted, the tax filings for the corporation refer to it as Midwest Medical Aesthetics Center, without the "Inc." or the "P.A.," which is how the Court allowed it to be referred to at trial. Nor does this minor change affect Stegman's right against double jeopardy or her right to be convicted on legally permissible grounds. She could not be tried again for the same crimes based on her actions related to MMACI versus MMAC. They are clearly the same entity. And this minor change to the Superseding Indictment did not correct a legally defective element or make it impossible to determine upon which ground the conviction is based. The Court therefore finds that there was no impermissible constructive amendment of the Superseding Indictment as to Counts 4 and 5, and Defendant's conviction on those counts is properly supported by the evidence. Her motion for judgment of acquittal as to Counts 4 and 5 is denied.

## II.    Motion for New Trial

Defendant also moves for a new trial pursuant to Rule 33(a), which allows the Court to "vacate any judgment and grant a new trial if the interest of justice so requires."[25] Although the standards for granting a new trial are not as strict as those for granting a judgment of acquittal, new trials are disfavored and courts exercise caution in granting them.[26] "The burden of demonstrating prejudicial error is on the defendant, and new trials should not be granted if a defendant's substantial rights have not been affected."[27]

Defendant presents five grounds upon which she claims the interests of justice require the Court to grant her a new trial. The Court addresses each in turn.

---

[25] Fed. R. Crim. P. 33(a).

[26] *United States v. Yoakam*, 168 F.R.D. 41, 44 (D. Kan. 1996).

[27] *Id.*

### a. **Variance to Superseding Indictment**

First, Defendant contends that the Superseding Indictment was literally amended to change the name of Midwest Medical Aesthetics Center, Inc., also referred to as MMACI, to Midwest Medical Aesthetics Center, or MMAC.  As the Court discussed above, this was merely a variance to the Superseding Indictment which did not affect Defendant's rights.  It did not broaden the basis for conviction, nor was there any question that Defendant had notice of the charges against her.  This variance was proper and does not amount to an impermissible amendment of the Superseding Indictment.

### b. **Constructive Amendment**

Defendant next argues that the Superseding Indictment was constructively amended as to the counts of corporate tax evasion because the jury instructions did not state that the jury had to find that Stegman personally owed the corporate taxes, which is what the Superseding Indictment charged.  By ignoring the phrase "by her" in the jury instructions, Defendant argues, the Court allowed a constructive amendment of the Superseding Indictment.  Because the Court grants Defendant's motion for judgment of acquittal on the corporate tax evasion counts, her Rule 33(a) motion as to those counts is moot.

### c. **Confrontation Clause**

Defendant argues that her Sixth Amendment right to confront witnesses against her was violated because the Court admitted testimonial written statements by her former tax preparer, Don Lake, who is deceased and did not testify at trial.  The Court's Memorandum and Order of March 3, 2016 partially addressed this issue,[28] and the Court also addressed it outside the presence of the jury during trial.

---

[28] Doc. 146 at 4–6.

The Court previously found that there were three potential categories of statements by Don Lake that were at issue in this case.[29] After hearing the Government's proffer during trial and observing the evidence in the case, the Court determines that there are actually two categories of statements. The first category consists of documents that Lake provided to IRS agents in connection with their investigation into Stegman's taxes and notes of interviews conducted by IRS officials during which both Lake and Stegman were present. Some of the documents had Lake's handwriting on them, which was identified at trial by Lake's wife; some documents contained handwriting that witnesses testified belonged to Defendant Stegman. The Court allowed those documents to be admitted at trial because they are not testimonial and are not subject to the Confrontation Clause. The documents were turned over to the IRS on Stegman's behalf within the scope of Lake's power of attorney relationship with Stegman. The documents themselves are business records, which are not testimonial and are not subject to the Confrontation Clause.[30] And statements in Stegman's handwriting, once properly authenticated, were admissible as statements of a party opponent pursuant to Fed. R. Evid. 801(d)(2)(A). Furthermore, Stegman was present for the interviews with IRS agents, and though Lake may have been the one talking to agents, he did so on her behalf as her power of attorney. The interview notes thus contain Stegman's statements and are also admissible pursuant to Fed. R. Evid. 801(d)(2)(A).

The second category of statements consists of statements made by Lake to IRS officials that were not truly Defendant Stegman's statements. The only statement of that nature the Government sought to introduce was a statement that Lake made to IRS agents without Stegman

---

[29] *Id.* at 5.

[30] *Crawford v. Washington*, 541 U.S. 36, 55 (2004).

present, stating that Samson, LLC was a Schedule E real estate business. The Court did not allow that statement to be admitted at trial because Stegman was not present when Lake made the statement, her own statements about Samson, LLC contradicted Lake's statement, and Stegman had no opportunity to cross examine Lake about that testimonial statement.

Defendant specifically points to Lake's handwritten notes and faxes to IRS agents, contending that these were Lake's testimonial statements that Stegman did not adopt as her own. However, Lake sent these faxes and notes to the IRS on Stegman's behalf, as her power of attorney. Because of the power of attorney relationship, they were, in essence, Stegman's own statements. The Court ruled at sidebar during trial that these statements fell within the scope of the power of attorney. They were properly admitted as statements of a party opponent under Rule 801(d)(2)(A); Defendant's Sixth Amendment rights were not violated.

### d. **Handwritten MMAC Ledgers**

Defendant next argues that she is entitled to a new trial because the Government was permitted at trial to directly associate the business records of MMAC, produced to the IRS in compliance with a corporate summons, with Stegman in her individual capacity. She argues that the Government asserted and elicited testimony that the handwritten ledgers of MMAC were produced by Stegman and that they were produced by MMAC, and that the handwriting on the ledgers was Stegman's. Defendant contends the ledgers were hearsay and should not have been admitted at trial.

The Court ruled in its Memorandum and Order of March 3, 2016 that the handwritten ledgers would be admissible as business records if the Government were to offer testimony establishing that the corporation produced the records.[31] The Government offered testimony of

---

[31]Doc. 146.

Agent Lindsay Schrock, who was assigned to the civil audit in this case before she recommended that the IRS open a criminal investigation. Agent Schrock testified that the handwritten ledgers were provided to her by MMAC in response to a summons requesting its business records. This was a proper foundation and did not inappropriately attribute the production of the ledgers to Stegman herself.

The Court also ruled that the handwritten ledgers were Stegman's own statements and thus were statements of a party opponent under Rule 801(d)(2)(A). The Court found that *United States v. Williams*[32] is analogous on this question. There, during a tax evasion trial, the Government introduced receipts of bingo sessions run by the defendant's corporation. The Eleventh Circuit held that the sheets were admissible as statements of a party opponent, in part because they bore the initials of the defendant in handwriting that a witness testified was the defendant's.[33] Similarly, the MMAC ledgers were handwritten and Agent Schrock testified that the handwriting was Defendant Stegman's. The ledgers were therefore properly admitted as party opponent statements. Defendant's rights were not violated and the Court does not find that a new trial is warranted on this basis.

  e. **Destruction of Civil Audit File**

Finally, Defendant argues that the trial was fundamentally unfair and violated her constitutional due process rights because the Government destroyed exculpatory evidence prior to trial. Specifically, she contends that the Government destroyed the civil audit file related to a 2005 IRS investigation of Stegman's 2000 and 2001 individual tax returns. Defendant claims this civil audit file was facially exculpatory in that it contained evidence of a cash hoard, which was a potential defense at trial. It also contained a "no change" letter to Stegman for the tax

---

[32] 837 F.2d 1009 (11th Cir. 1988).
[33] *Id.* at 1013–14.

years that were at issue during that civil audit.  Even if the file was only potentially exculpatory, Defendant argues the Government acted in bad faith and the trial was therefore fundamentally unfair.

IRS Agent Janice Willard, who testified at trial as a fact witness and an expert witness, spent about twelve hours reviewing the file and took fourteen pages of notes.  Special Agent Randy Praisewater, who led the criminal investigation, also reviewed the file to see whether it had any exculpatory or evidentiary value.  The two discussed the contents of the file and Agent Willard's summary and determined that it was not relevant to the tax years at issue in the criminal investigation and it did not contain exculpatory information.  They sent the civil audit file back to Agent Willard's supervisor in St. Louis to be refiled, about a year before the original Indictment was filed in this case.  They testified at a prior hearing that they believed the file would be returned to wherever it had been stored originally.  However, the file was destroyed at the National Archives and Record Administration facility around July 2013 without the agents' knowledge.

The Court addressed Defendant's arguments about the destruction of the civil audit file in its Memorandum and Order of August 21, 2015 denying Defendant's motion to dismiss the charges against her.[34]  The Court held an evidentiary hearing prior to issuing that Memorandum and Order and heard testimony from both agents.  The Court found that the civil audit file did not have apparent exculpatory value that could not be reasonably obtained from other sources.  The Court also found that there was no bad faith on the part of the Government.  The agents did not know the file would be destroyed and did not intend for it to be destroyed.  For the same reasons

---

[34] Doc. 108.

14

the Court outlined in its prior Memorandum and Order,[35] the Court finds that Defendant's substantial rights were not violated by the destruction of the civil audit file or her inability to use the file at trial.

The Court thus finds that Defendant has not shown any basis for it to grant a new trial. That aspect of her motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Acquittal (Doc. 191) and her Motion for Acquittal or in the Alternative for New Trial (Doc. 205) are granted as to Counts 1 and 2 of the Superseding Indictment.  The motion for acquittal is denied as to Counts 4 and 5.  Defendant's motion for new trial is denied.

**IT IS SO ORDERED.**

Dated: September 19, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[35]*Id.*