IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 14-CR-20109-01-JAR |
| KATHLEEN STEGMAN, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Kathleen Stegman's Motion for Bond

Pending Appeal (Doc. 254).  Defendant seeks release on bond pending appeal because she

argues that her appeal presents substantial questions of law that could result in a reversal of her

conviction.  The motion is fully briefed and the Court is prepared to rule.  For the reasons stated

in detail below, the Court denies Defendant's motion for bond pending appeal.

I.      **Background**

Defendant Stegman was charged in a Superseding Indictment with three counts of

corporate income tax evasion in violation of 26 U.S.C. § 7201, related to her business, Midwest

Medical Aesthetics Center ("MMAC").[1]  Counts 4 and 5 of the Superseding Indictment charged

her with individual tax evasion in violation of 26 U.S.C. § 7201.  She and co-Defendant

Christopher Smith were charged in Count 6 with one count of conspiracy to defraud the United

States in violation of 18 U.S.C. § 371.

At the completion of a six-week jury trial, the jury returned guilty verdicts on Counts 1,

2, 4, and 5.  The jury acquitted Defendant of Count 3, the corporate tax evasion charge for tax

---

[1]Doc. 41.  As discussed more fully below, the original Superseding Indictment referred to the business as "Midwest Medical Aesthetics Center, Inc" ("MMACI").

year 2010.  Both defendants were acquitted of Count 6, the conspiracy charge.  Following the

trial, Defendant filed Motions for Acquittal or, in the Alternative, for New Trial.[2]  On September

19, 2016, the Court granted Defendant's motion for acquittal as to Counts 1 and 2, denied her

motion for acquittal as to Counts 4 and 5, and denied her motion for new trial.[3]

On October 18, the Court sentenced Defendant to a term of fifty-one months'

imprisonment and three years supervised release on Counts 4 and 5, to be served concurrently.

Defendant filed a Notice of Appeal on October 31, 2016.  Defendant also filed a Motion to

Extend the Voluntary Self-Surrender Date.[4]  The Court granted that motion and extended

Defendant's self-surrender date until January 2, 2017.[5]

## II.    Discussion

Under 18 U.S.C. § 3143(b), a defendant who has filed an appeal may be released on bond

pending appeal if a court finds

(A) by clear and convincing evidence that the person is not likely to flee or pose a
    danger to the safety of any other person or the community if released under
    section 3142(b) or (c) of this title; and
(B) that the appeal is not for the purpose of delay and raises a substantial question
    of law or fact likely to result in [reversal, an order for new trial, or a reduced
    sentence].

The Tenth Circuit has explained that a "substantial question" for purposes of the § 3143(b)

analysis means a "'close' question or one that very well could be decided the other way."[6]

Defendant argues for release because three issues that this Court previously ruled on will present

close questions on appeal.  The Court addresses each argument in turn.

---

[2]Docs. 191 & 205.

[3]Doc. 238.

[4]Doc. 259.

[5]Doc. 262.

[6]*United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985); *United States v. Allerheiligen*, No. 97-400090-01-DES, 1999 WL 287711, at *2 (D. Kan. Apr. 29, 1999).

A.      Amendment of Superseding Indictment

Defendant first argues that a close question exists as to whether the Court's allowance of the Government's amendment of the Superseding Indictment from "MMACI" to "MMAC" deprived her of her substantial rights.  "A constructive amendment, which is reversible per se, occurs when the district court's instructions and the proof offered at trial broaden the indictment."[7]  On the other hand, "[a] simple variance arises when the evidence adduced at trial established facts different from those alleged in the indictment."[8]  "An amendment of form and not of substance" is a mere variance "when the defendant is not misled in any sense, is not subjected to any added burdens, and is not otherwise prejudiced."[9]  "[A] simple variance does not warrant the reversal of a conviction so long as the variance did not affect the defendant's substantial rights."[10]  The substantial rights courts generally are concerned about in this context are the defendant's Sixth Amendment right to notice of the charges against her, the defendant's Fifth Amendment right against double jeopardy, and the right to be convicted on legally permissible grounds.[11]

Defendant argues that it is a close question whether the change in the name of the company constituted an unconstitutional amendment of the Superseding Indictment, rather than a simple variance.  She argues that by allowing the Government to change the name of MMACI, the Court unconstitutionally broadened the possible bases of conviction.  Defendant argues that as a result of the change in the Superseding Indictment to MMAC, she was obligated to refute

---

[7]*United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) (citing *United States v. Wright*, 932 F.2d 868, 874 (10th Cir. 1991) *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006)).

[8]*Id.* (citing *Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990)).

[9]*United States v. Cook*, 745 F.2d 1311, 1316 (10th Cir. 1984) (citing *Williams v. United States*, 179 F.2d 656, 659 (5th Cir. 1950)).

[10]*United States v. Stoner*, 98 F.3d 527, 532 (10th Cir. 1996) (internal quotation marks and brackets omitted).

[11]*Id.* at 536–37.

allegations that she unreported earnings from both MMACI and MMAC, and she was no longer able to use testimony from the Kansas Secretary of State's office regarding the existence of MMACI during the tax years at issue.

The Court previously ruled on this issue at trial, as well as in its Memorandum and Order granting in part and denying in part Defendant's motion for acquittal.[12]  As the Court explained in these previous rulings, the change to MMAC in the Superseding Indictment constituted a mere variance.  Defendant had notice of the charges against her, and the amendment did not mislead her or subject her to any added burdens at trial.  Defendant was not obligated to refute allegations of unreported income of MMACI, because this entity did not exist during the tax years at issue. Even before the variance was allowed, the Superseding Indictment made clear that the relevant entity was the entity that filed the tax returns during the tax years at issue, *i.e.*, MMAC.  Indeed, the relevant tax returns in evidence at trial named MMAC as the name of the corporation, and Defendant used MMAC as the name of the entity in pleadings filed with the Court.

As the Court previously explained, this was not a case in which the Government incorrectly named an entity that was in existence during the tax years at issue and filed a separate set of returns than the actual relevant entity.  In such a situation, Defendant may have been legitimately confused as to which entity was actually implicated.  Here, by contrast, the Superseding Indictment incorrectly named a corporation that was not in existence and did not file tax returns during the tax years at issue, likely because the relevant tax returns represented the entity to be a C corporation.  But the Superseding Indictment made clear that the only relevant entity was MMAC, the only entity that was in existence and the only entity that filed tax returns during the tax years at issue.  The variance here from MMACI to MMAC did not impermissibly

---

[12]Doc. 238.

broaden the Superseding Indictment, but simply amended the form of the company that was already clearly implicated.  Accordingly, the Court finds that Defendant has not presented a substantial question of law as to whether the Superseding Indictment was constructively amended.

### B.    Civil Audit File

Defendant argues the trial and sentencing were fundamentally unfair and violated her constitutional due process rights because the Government destroyed exculpatory evidence prior to trial.  Specifically, she contends that the Government destroyed the civil audit file related to a 2005 IRS investigation of Stegman's 2000, 2001, and 2002 individual tax returns.  The file also contained a "no change" letter to Stegman for the tax years that were at issue during the civil audit.  IRS Agent Janice Willard reviewed the civil audit file in April 2011 during the course of investigating this case, and took fourteen pages of notes that summarized the file.  Although the audit file was destroyed, Agent Willard's notes were retained and offered in evidence at trial.

Under the Due Process clause, the Government must preserve evidence that is constitutionally material: "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[13]  Evidence is material if it is "favorable to the accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal."[14]  In *Arizona v. Youngblood*,[15] the Supreme Court provided

---

[13]*California v. Trombetta*, 467 U.S. 479, 488–89 (1984).

[14]*United States v. Sullivan*, 919 F.2d 1403, 1427 (10th Cir. 1990) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

[15]488 U.S. 51 (1988).

that if the evidence is instead only "potentially useful" for the defense, then the defendant must show that the Government acted in bad faith in destroying the evidence.[16]

The Court addressed Defendant's arguments about the destruction of the civil audit file in its Memorandum and Order of August 21, 2015, denying Defendant's motion to dismiss the charges against her.[17]   The Court held an evidentiary hearing prior to issuing that Memorandum and Order and heard testimony from Agent Willard and Special Agent Randy Praiswater. The Court found that the civil audit file did not have apparent exculpatory value that could not be reasonably obtained from other sources.  The Court also found that there was no bad faith on the part of the Government. The agents did not know the file would be destroyed and did not intend for it to be destroyed.  The Court again addressed these arguments in denying Defendant's motion for new trial.[18]

Defendant largely repeats her arguments regarding the civil audit file in support of her present motion.  Defendant argues that the file was facially exculpatory because it contained evidence that supported her cash hoard and good faith reliance defenses.  Alternatively, she contends that even if the civil audit file was only *potentially* exculpatory, the Government acted in bad faith in destroying the file.

As the Court explained in its previous rulings, the information contained in the civil audit file was not facially exculpatory.  The civil audit was entirely unrelated to the charges at issue in this case, and the statements by her tax preparers during this audit did not have any apparent exculpatory value as to Defendant's good faith defense.  Further, contrary to Defendant's suggestion that Agent Willard admitted at the August 2015 hearing that the audit file contained

---

[16]*Id.* at 58.

[17]Doc. 108.

[18]Doc. 238 at 13–15

evidence supporting a cash hoard defense, the Court has previously found that Agent Willard repeatedly testified at the hearing that the audit file did not contain evidence of such a defense.[19] The Court cannot find that a close question exists as to whether the civil audit file contained facially exculpatory evidence that was apparent before the audit file was destroyed.

Turning to Defendant's bad faith argument, the factors relevant to this issue weighed decidedly in favor of a finding that the Government acted without bad faith: the Government did not have explicit notice at the time the audit file was destroyed that Defendant believed the evidence was exculpatory; Defendant's claim that the audit file was exculpatory as to the charged offenses lacked significant evidentiary support; the Government did not have the audit file at the time of the Indictment; the audit file was not central to the Government's case; and the Government provided an adequate explanation for the destruction of the file, *i.e.*, that the audit file was destroyed only after the Agents made a summary of the file's contents and determined that the information was not relevant or exculpatory.[20]  Consistent with this finding, the Court ruled *in limine* that Defendant could present evidence regarding the civil audit file in support of her cash hoard defense, but could not introduce testimony or evidence that officials acted in bad faith when the audit file was destroyed.[21]  Accordingly, the Court cannot find that a close question exists as to whether the civil audit file was destroyed in bad faith.

In sum, the Court cannot find that a substantial question exists as to whether the destruction of the civil audit file rendered Defendant's trial and sentencing fundamentally unfair. At most, the civil audit file was only *potentially* exculpatory, and the circumstances surrounding the destruction of the audit file strongly suggest that the Government acted without bad faith.

---

[19]Doc. 108 at 13.

[20]*See United States v. Bohl*, 25 F.3d 904, 910–12 (10th Cir. 1994) (applying *Arizona v. Youngblood*, 488 U.S. 51 (1988)).

[21]Doc. 146 at 4.

Moreover, any unfairness to Defendant was tempered by her ability to use the fourteen pages of summary notes, cross-examination, and testimony of her experts—who relied on the summary notes—to support her cash hoard and good faith defenses.  Thus, the Court finds that Defendant has not presented a substantial question as to whether her trial and sentencing were fundamentally unfair based on the destruction of the civil audit file.

###       C.       Statements by Don Lake

Finally, Defendant argues that a close question exists as to whether her Sixth Amendment right to confront witnesses against her was violated based on the admission of written statements by her former tax preparer, Don Lake, who is deceased and did not testify at trial.  "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness."[22]  The Court initially ruled on this issue in response to Defendant's motion *in limine* to exclude Lake's statements, and again ruled on this issue in response to Defendant's motion for new trial.[23]  As previously explained, the Government sought to admit documents that Lake provided to IRS agents in connection with their investigation into Defendant's taxes, as well as notes of interviews conducted by IRS officials during which both Lake and Defendant were present.  Some of the documents had Lake's handwriting on them, which was identified at trial by Lake's wife; some documents contained handwriting that witnesses testified belonged to Defendant Stegman.

The Court allowed those documents to be admitted at trial because they were not testimonial and were not subject to the Confrontation Clause.  Defendant argues that Lake's statements to the IRS were testimonial, and therefore allowing the Government to introduce his

---

[22]*Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011).

[23]Docs. 146 & 238.

statements without Defendant having the opportunity to cross-examine him violated her rights under the Conrontation Clause.  The documents, however, were turned over to the IRS on Stegman's behalf within the scope of Lake's power of attorney relationship with Stegman. Because of the power of attorney relationship, they were, in essence, Stegman's own statements, and thus properly admitted as statements of a party opponent under Rule 801(d)(2)(A).  The documents themselves were business records, which are not testimonial and are not subject to the Confrontation Clause.[24]  The Court therefore finds that Defendant has not presented a close question as to whether the admission at trial of Lake's written statements to the IRS violated her Sixth Amendment Confrontation Clause rights.

## III.    Conclusion

The Court finds that Defendant has not presented a substantial question of law to justify her release on bond pending appeal.  As the Court explained above, the change of MMACI to MMAC in the Superseding Indictment was a simple variance, rather than a constructive amendment.  Additionally, there is little, if any, evidence in the record that the civil audit file contained facially exculpatory information that was apparent before the audit file was destroyed, or that the Government acted in bad faith in destroying the file.  Finally, Defendant has not presented a close question as to whether her Confrontation Clause rights were violated by allowing the admission at trial of Don Lake's written statements to the IRS.  For these reasons, the Court denies Defendant's motion for bond pending appeal.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Kathleen Stegman's Motion for Bond Pending Appeal (Doc. 254) is **denied**.  Defendant shall report to the United States Bureau of Prisons by no later than **January 2, 2017**.

---

[24]*Crawford v. Washington*, 541 U.S. 36, 55 (2004).

**IT IS SO ORDERED.**

Dated: December 1, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE